John P. Aldrich, Esq.
Nevada Bar No. 6877
**ALDRICH LAW FIRM, LTD.**
1601 S. Rainbow Blvd., Suite 160
Las Vegas, Nevada 89146
Telephone: (702) 853-5490
Facsimile: (702) 227-1975
Email: jaldrich@johnaldrichlawfirm.com

*Liaison Counsel for Plaintiff*

[*Additional Counsel listed on signature block*]

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| GARY MATTHEW, Derivatively on Behalf of ORMAT TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> TODD C. FREELAND, RAVIT BARNIV, ROBERT F. CLARK, DAFNA SHARIR, DAN M. FALK, DAVID GRANOT, YUICHI NISHIGORI, STANLEY B. STERN, BYRON G. WONG, GILLON BECK, AMI BOEHM, ROBERT E. JOYAL <br><br> Defendants, <br><br> -and- <br><br> ORMAT TECHNOLOGIES, INC., a Delaware corporation, <br><br> Nominal Defendant. | Case No. <br><br> **VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT** <br><br><br> **JURY TRIAL DEMANDED** |

Plaintiff Gary Matthew ("Plaintiff"), by and through his attorneys, submits this Verified Stockholder Derivative Complaint on behalf of Ormat Technologies, Inc. ("Ormat" or the "Company") against the defendants named herein.

## OVERVIEW

1.      This is a derivative action on behalf of Ormat against certain members of its Board of Directors (the "Board") seeking to remedy defendants' (defined herein) breaches of their fiduciary duties, abuse of control, gross mismanagement, and corporate waste that occurred between August 8, 2017 and May 15, 2018 (the "Relevant Period"). By this Action, Plaintiff seeks to recover damages and other relief against defendants for failing to ensure Ormat's financial reporting was accurate. During the Relevant Period, defendants issued false and misleading public statements concerning Ormat's financial operations and results, which the Company was forced to restate to reflect a significant loss in tax benefits.

2.      Plaintiff makes these allegations upon personal knowledge as to those allegations concerning Plaintiff, and to all other matters, upon the investigation of counsel, which includes, without limitation: (1) review and analysis of Ormat's public filings; (2) review and analysis of press releases and other publications disseminated by certain of the defendants and other related non-parties; (3) pleadings, papers, and any documents filed with, and publicly available from, the related pending securities fraud class action, *Costas v. Ormat Technologies Inc. et al.*, No. 3:18-cv-00271-RCJ (D. Nev.) (the "Securities Class Action"); and (4) review of other publicly-available information concerning Ormat and the defendants.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction pursuant to 28 U.S.C. § 1322(a)(3) because Plaintiff and defendants are citizens of different states or subjects of a foreign state and the amount in controversy exceeds $75,000, exclusive of interest and costs. This Action is not a collusive Action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

4.      This Court has jurisdiction over each defendant because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who

has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

5.      Venue is proper in this Court under 28 U.S.C. § 1391(a): because (1) Ormat maintains its principal place of business in the District; (2) one or more of the defendants either resides in or maintains executive offices in this District; (3) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to Ormat, occurred in this district; and (4) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

6.      In connection with the acts, conduct, and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of the national securities exchange.

## PARTIES

**A.    Plaintiff**

7.      Plaintiff is a stockholder of Ormat, was a stockholder of Ormat at the time of the wrongdoing alleged herein and has been a stockholder of Ormat continuously since that time.  Plaintiff will fairly and adequately represent the interest of Ormat's shareholders in enforcing the rights of the Company.  Plaintiff is a citizen of Los Angeles, California.

**B.    Nominal Corporate Defendant**

8.      Nominal defendant Ormat is a Delaware corporation with its headquarters located at 6225 Neil Road, Reno, Nevada. Ormat engages in the geothermal and recovered energy power business worldwide.

**C.    The Director Defendants**

9.      Defendant Todd C. Freeland ("Freeland") has served as a director of Ormat since July 26, 2017. Freeland was appointed as a director of Ormat in connection with the governance agreement ("Governance Agreement") entered into between the Company and ORIX Corporation ("ORIX"),

whereby ORIX purchased 22.1% of the common stock of Ormat in exchange for $627 million. According to the Governance Agreement, ORIX has the right to appoint three directors to the Ormat Board and to jointly nominate an independent director. Freeland is a member of the Compensation Committee and the Chair of the Nominating and Corporate Governance Committee.  Freeland serves as Co-Head of Energy and Eco Services Business Headquarters and CEO of Energy and ECO Services Europe at ORIX.  Upon information and belief, defendant Freeland resides in Hong Kong.

10.     Defendant Ravit Barniv ("Barniv") has served as a director of Ormat since November 15, 2015. Barniv serves as Chair of the Compensation Committee. Upon information and belief, defendant Barniv resides in Israel.

11.     Defendant Robert F. Clark served as a director of Ormat from February 27, 2007 to May 8, 2018.  Clark served as a member of the Audit Committee until his departure.  Upon information and belief, defendant Clark resides in the state of Hawaii.

12.     Defendant Dafna Sharir ("Sharir") has served as a director of Ormat since May 8, 2018. Upon information and belief, defendant Sharir resides in Israel.

13.     Defendant Dan M. Falk ("Falk") has served as a director of Ormat since November 12, 2004. The Board has concluded that Falk should serve as a director "primarily because of his qualification as an 'audit committee financial expert' under Section 407 of the Sarbanes-Oxley Act of 2002 ("SOX") and Item 407(d)(5) of Regulation S-K."[1]  Falk serves as Chair of the Audit Committee and a member of the Compensation Committee and Special Committee designed to evaluate the Governance Agreement. Clarke also serves on the audit committees of three other publicly-traded companies. Upon information and belief, defendant Falk resides in Israel.

14.     Defendant David Granot ("Granot") has served as a director of Ormat since May 22, 2012. Granot serves as a member of the Audit Committee, Compensation Committee, Nominating and Corporate Governance Committee, Investment Committee, and was a member of the Special

---

[1]          2018          Proxy,          available          at
https://www.sec.gov/Archives/edgar/data/1296445/000117891318000972/zk1821406.htm.

Committee designated to evaluate the Governance Agreement. Upon information and belief, defendant Granot resides in Israel.

15.     Defendant Yuichi Nishigori ("Nishigori") has served as a director of Ormat since July 26, 2017. Nishigori was appointed as a director of Ormat in connection with the Governance Agreement entered into between the Company and ORIX, whereby ORIX purchased 22.1% of the common stock of Ormat in exchange for $627 million. According to the Governance Agreement, ORIX has the right to appoint three directors to the board of Ormat and to jointly nominate an independent director.  Nishigori serves as a member of the Investment Committee. Nishigori serves as Head of Energy and Eco Services Business Headquarters at ORIX and has served as a board member of ORIX since 2015. Upon information and belief, defendant Nishigori resides in the state of New York.

16.     Defendant Stanley B. Stern ("Stern") has served as a director of Ormat since November 16, 2015.  Stern serves as a member of the Audit Committee and was a member of the Special Committee designed to evaluate the Governance Agreement. Upon information and belief, defendant Stern resides in the state of New York.

17.     Defendant Byron G. Wong ("Wong") has served as a director of Ormat since July 26, 2017. Wong was appointed as an independent director of Ormat in connection with the Governance Agreement between the Company and ORIX, whereby ORIX purchased 22.1% of the common stock of Ormat in exchange for $627 million. According to the Governance Agreement, ORIX has the right to appoint three directors to the board of Ormat and to jointly nominate an independent director. Wong serves as a member of the Audit Committee. Upon information and belief, defendant Wong resides in the state of Connecticut.

18.     Defendant Gillon Beck ("Beck") served as a director of Ormat since May 22, 2012 and served as Chairman of the Board from November 17, 2015 to July 26, 2017, when he resigned in connection with the Governance Agreement. Though not a director during the Relevant Period, Beck was Chairman of the Board until July 26, 2017, and participated in the preparation of the false and misleading documents filed with the SEC starting just thirteen days after his departure. Before his

departure Beck served as Chair of the Nominating and Corporate Governance Committee. Upon information and belief, defendant Beck resides in Israel.

19.     Defendant Ami Boehm ("Boehm") served as a director of Ormat since May 22, 2012 and served as a member of the Compensation Committee and the Investment Committee before his departure in July 26, 2017, when he resigned in connection with the Governance Agreement. Though not a director during the Relevant Period, Boehm was a member of the Board until July 26, 2017 and participated in the preparation of the false and misleading documents filed with the SEC just thirteen days after his departure. Upon information and belief, defendant Boehm resides in Israel.

20.     Defendant Robert E. Joyal ("Joyal") served as a director of Ormat since May 22, 2012 and served as a member of the Audit Committee before his departure in July 26, 2017, when he resigned in connection with the Governance Agreement. Though not a director during the Relevant Period, Joyal was a member of the Board until July 26, 2017 and participated in the preparation of the false and misleading documents filed with the SEC filed just thirteen days after his departure.  Upon information and belief, defendant Joyal resides in the state of Vermont.

21.     The defendants identified in ¶¶9-20 are collectively referred to as the "Director Defendants" or the "Board of Directors" or the "Board."

22.     The Director Defendants or Board, with nominal defendant Ormat, collectively, are referred to herein as the "Defendants."

23.     As directors of Ormat, the Director Defendants knew, consciously disregarded, were reckless and grossly negligent in not knowing, or should have known the adverse, non-public information about the business of Ormat including its present and future business prospects via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof, as well as internal reports and other information provided to them in connection therewith. Each of the Director Defendants participated in the issuance of materially false and misleading statements contained in Ormat's stockholder reports, press releases, and public filings.

## THE DIRECTOR DEFENDANTS' FIDUCAIRY DUTIES

24.     By reason of their positions as directors and thus fiduciaries of Ormat and because of their ability to control the business and corporate affairs of Ormat, the Director Defendants owed Ormat and its stockholders fiduciary obligations of care, loyalty, and good faith, and were and are required to use their utmost ability to control and manage Ormat in a fair, just, honest, and equitable manner. The Director Defendants were and are required to act in furtherance of the best interests of Ormat and its stockholders to benefit all stockholders equally and not in furtherance of their personal interest or benefit.

25.     Each director of the Company owes to Ormat and its stockholders the fiduciary duty to exercise good faith and loyalty in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing. In addition, under the fiduciary duty of loyalty, the Director Defendants had a duty to promptly disseminate accurate and truthful information about the Company's business and financial condition.

26.     The Director Defendants, because of their positions of control and authority as directors and/or officers of Ormat, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company. Because of their executive positions with Ormat, each of the Director Defendants had access to adverse non-public information about, among other things, the true nature of Ormat's financial operations and results, and the improper representations of Ormat concerning that information.

27.     At all times relevant hereto, each of the Director Defendants was the agent of each of the other Director Defendants and of Ormat and was always acting within the course and scope of such agency.

28.     The Director Defendants breached their duties of loyalty and good faith by misrepresenting the condition of the Company's business and finances, as detailed herein. In addition, because of the Director Defendants' faithless acts, the Company has been named as a defendant in a large, complex, and costly-to-defend Securities Class Action lawsuit. As a result, Ormat has expended,

and will continue to expend, significant sums of money and is subject to potentially significant liability for the wrongful acts of its officers and directors.

## AUDIT COMMITTEE DUTIES

29.     In addition to these duties, the members of the Audit Committee owed specific duties to Ormat under the Audit Committee Charter, including duties to review and approve quarterly and annual financial statements and earnings press releases, and to ensure that the Company had appropriate and effective internal controls over financial reporting.

30.     According to the Audit Committee Charter, (last amended August 5, 2016), "[t]he purpose of the Audit Committee . . . is (A) to assist the Board in fulfilling its oversight responsibilities with respect to:

      a.    The integrity of the Company's financial statements;

      b.    The effectiveness of the Company's internal controls over financial reporting;

      c.    The Company's compliance with legal and regulatory requirements;

      d.    The independence and qualifications of the Company's independent auditor; and

      e.    The performance of the Company's internal audit function and independent auditor

and (B) prepare the Audit Committee report required by the rules of the Securities and Exchange Commission…to be included in the Company's annual proxy statement.

31.     Upon information and belief, the Company maintained an Audit Committee Charter during the Relevant Period that imposed the same, or substantially and materially the same or similar, duties on the members of the Audit Committee as those set forth above.

## CONTROL, ACCESS, AND AUTHORITY

32.     The Director Defendants, because of their positions of control and authority as directors and/or officers of Ormat, were able to, and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of various public statements issued by Ormat.

33.     Because of their advisory, executive, managerial, and directorial positions with Ormat, each of the Director Defendants had access to adverse, non-public information about the financial condition, operations, and improper representations of Ormat.

34.     At all times relevant hereto, each of the Director Defendants was the agent of the other Director Defendants and of Ormat and was always acting within the courts and scope of such agency.

## <u>REASONABLE AND PRUDENT SUPERVISION</u>

35.     To discharge their duties, the Director Defendants were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company. By virtue of such duties, the Director Defendants were required to, among other things:

a.  Ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the investing public;

b.  Conduct the affairs of the Company in an efficient, business-like manner as to make it possible to provide the highest-quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

c.  Properly and accurately guide investors and analysts as to the true financial and business prospects of the Company at any given, including making accurate statements about the Company's business and financial prospects and internal controls;

d.  Remain informed as to how Ormat conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with securities laws; and

e.  Ensure that Ormat was operated in a diligent, honest, and prudent manner in compliance with all applicable laws, rules, and regulations.

## SUBSTANTIVE ALLEGATIONS

**A.    Background**

36.    Ormat is a publicly traded company on the New York Stock Exchange ("NYSE") engaged in geothermal and recovered energy power business worldwide. The Company develops, builds, owns, and operates geothermal and recovered energy-based electricity generation, such as fossil fuel powered turbo-generators and heavy duty direct-current generators.

37.    As a publicly traded company, Ormat must file quarterly and annual reports with the SEC, known as Forms 10-Q and Forms 10-K, respectively. These reports include information concerning the Company's business operations and financial conditions. Preceding these reports, Ormat issues press releases containing the same information. By law, all the information included in these reports and press releases must be accurate and neither false nor misleading.

38.    The accuracy of these reports, including all information contained therein, is the responsibility of Ormat's Board. In 2017 and 2018, the Board consisted of the following, before and after the Governance Agreement went into effect on July 26, 2017:

| **Director** | **Until July 26, 2017** | **After July 26, 2017** |
|---|---|---|
| Freeland | No | Yes |
| Barniv | Yes | Yes |
| Falk | Yes | Yes |
| Granot | Yes | Yes |
| Nishigori | No | Yes |
| Stern | Yes | Yes |
| Wong | No | Yes |
| Beck | Yes | No |
| Boehm | Yes | No |
| Joyal | Yes | No |
| **Director** | **Until May 8, 2018** | **After May 8, 2018** |

| Sharir | No | Yes |
|--------|-----|-----|
| Clarke | Yes | No |

39.    Additionally, the accuracy of these reports is also the responsibility of Ormat's Audit Committee. In 2017 and 2018, Ormat's Audit Committee consisted of the following directors, before and after the Governance Agreement went into effect on July 26, 2017:

| **Director** | **Until July 26, 2017** | **After July 26, 2017** |
|--------------|-------------------------|-------------------------|
| Falk | Yes | Yes |
| Granot | Yes | Yes |
| Joyal | Yes | No |
| Wong | No | Yes |
| **Director** | **Until February 22, 2018** | **After February 22, 2018** |
| Clarke | Yes | No |
| Stern | No | Yes |

**B.    Ormat's Internal Controls and Financial Reporting**

40.    On March 1, 2017, the Company filed a Form 10-K for the fiscal year-ended December 31, 2016 (the "2016 10-K") with the SEC, which provided the Company's year-end financial results and position and stated that Ormat's internal controls over financial reporting and disclosure controls and procedures were effective as of December 31, 2016. The 2016 10-K was signed by defendants Beck, Boehm, Falk, Granot, Barniv, Joyal, Clarke, and Stern. The 2016 10-K also contained signed certifications pursuant to SOX by Ormat's Chief Executive Officer ("CEO") Isaac Angel ("Angel") and Chief Financial Officer ("CFO") Doron Blachar ("Blachar") attesting to the accuracy of Ormat's financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

41.    On May 9, 2017, the Company filed a Form 10-Q for the first quarter-ended March 31, 2017 (the "1Q 2017 10-Q") with the SEC, which provided Ormat's first quarter 2017 financial results

and position. The 1Q 2017 10-Q stated that the Company's disclosure controls and procedures were effective as of March 31, 2017, and that "[t]here were no changes in our internal controls over financial reporting in the first quarter of 2017 that have materially affected or are reasonably likely to materially affect our internal controls over financial reporting." The 1Q 2017 10-Q was signed by Blachar. The 1Q 2017 10-Q contained signed SOX certifications by Angel and Blachar attesting to the accuracy of Ormat's financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

42.    According to Defendants, Ormat's internal control over financial reporting and disclosure controls and procedures were effective as of March 31, 2017.

**C.   Ormat's Inappropriate Accounting Procedures and Inaccurate Financial Results**

43.    On August 3, 2017, Defendants issued a press release to announce Ormat's second quarter 2017 results (the "2017 Q2 Press Release"). The 2017 Q2 Press Release discussed the execution of a Power Purchase Agreement ("PPA") between ONGP LLC, an Ormat subsidiary, and the Southern California Public Power Authority ("SCPPA"), pursuant to which SCPPA agreed to purchase 150MW of power generated by the Company for twenty-six (26) years, until December 31, 2043 at a fixed price of $75.50 per MWh. The press release stated in relevant part:

> "Continued growth in our electricity segment and a strong quarter for our products segment enabled us to deliver 12.2% top-line growth in the second quarter," commented Isaac Angel, Chief Executive Officer. "Our focus on streamlining our entire value chain over the past three years enabled us to increase electricity segment gross margin to 41.5% and to grow our Adjusted EBITDA by 8.5%, demonstrating the strength of our business."

> "***During the second quarter we signed the new portfolio PPA with SCPPA. This portfolio PPA will enable both the development of multiple new projects as well as the sustainable operation of several of our existing geothermal power plants. With the SCPPA portfolio PPA in place, Ormat is well positioned for consistent growth in the US.*** Another recent noteworthy development is that with the closing of ORIX's acquisition of an approximately 22% ownership stake in Ormat, the Commercial Cooperation Agreement that Ormat and ORIX executed in connection with that acquisition became effective last week, and we expect that it will expand our business opportunities in Asia and other key geographies and may also improve our access to capital," added Mr. Angel.

*Guidance*

Mr. Angel added, "We reiterate our guidance and expect full-year 2017 total revenues between $680.0 million and $700.0 million with electricity segment revenues between $460.0 million and $470.0 million and product segment revenues between $220.0 million and $230.0 million. We expect 2017 Adjusted EBITDA between $340 million and $350 million for the full year. We expect annual Adjusted EBITDA attributable to non-controlling interest to be approximately $23.0 million."

44.     On August 8, 2017, Ormat filed its Form 10-Q for the quarter ended June 30, 2017 (the "2Q 2017 10-Q") with the SEC, which provided the Company's second quarter 2017 financial results and position. In this report, Ormat discussed the Company's decision to repatriate "a portion of the unrepatriated earnings of Ormat Systems ('OSL')" its fully-owned subsidiary located in Israel, to "make significant capital expenditures in the U.S." including for the SCPPA PPA.  This decision meant that "the related deferred tax assets and liabilities as well as the estimated withholding taxes on expected remittance of OSL earnings to the U.S. were recorded by the Company in the second quarter of 2017."

45.     With respect to the effect that this decision had on the income tax provision, the 2Q 2017 10-Q stated:

Income tax provision for the three months ended June 30, 2017 was ***$6.4 million, compared to $7.9 million for the three months ended June 30, 2016***. Our effective tax rate for the three months ended June 30, 2017 and June 30, 2016, was 14.2% and 23.2%, respectively. Our effective tax rate is primarily based upon the composition of our income in different countries and changes related to valuation allowances for certain countries. Our aggregate effective tax rate for the three months ended June 30, 2017 is lower than the 35% U.S. federal statutory tax rate [*sic*] (i) ***a partial valuation allowance release against the Company's U.S. deferred tax assets as described above offset by withholding taxes related to the assertion change on the Company's permanent reinvestment of foreign unremitted earnings in Ormat Systems also as described above***, (ii) lower tax rate in Israel of 16%, partially offset by a tax rate in Kenya of 37.5%; and (iii) a tax credit and tax exemption related to the Company's subsidiaries in Guatemala and Honduras.

46.     The 2Q 2017 10-Q also reported an income tax (provision) for the three months and six months ended June 30, 2017 of ($6.4 million) and ($17.3 million), respectively, net income for the same period of $38.2 million and $78 million, respectively and diluted earnings per share for the same period of $0.69 and $1.39, respectively.

47.     The 2Q 2017 10-Q also reported deferred income taxes for the period ended June 30, 2017 of $44.1 million.

48.     With respect to Ormat's internal controls, the 2Q 2017 10-Q stated that the Company's disclosure controls and procedures were effective as of June 30, 2017, and that "[t]here were no changes in our internal controls over financial reporting in the second quarter of 2017 that have materially affected or are reasonably likely to materially affect our internal controls over financial reporting." The 2Q 2017 10-Q was signed by Blachar.

49.     Blachar and Angel separately certified the 2Q 2017 10-Q pursuant to SOX, attesting:

I, [], certify that:

1. I have reviewed this quarterly report on Form 10-Q of Ormat Technologies, Inc.;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

(a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure

controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's Board of Directors (or persons performing the equivalent functions):

(a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

50.     Despite the assurances and certifications from Defendants and their agents, Angel and Blachar, Ormat's financial results reported in the 2Q 2017 10-Q did not fairly and accurately present the Company's financial condition. In fact, the results were false and misleading, as the Director Defendants had made crucial errors in calculating the income tax provision related to Ormat's valuation allowance. In addition, as Defendants would ultimately admit, the Company failed to maintain adequate internal controls over its financial reporting by materially misstating deferred income tax assets and deferred income tax liabilities and improperly netting certain amounts in violation of U.S. generally accepted accounting principles ("GAAP"). As a result, the Director Defendants failed to maintain internal controls and the 2Q 2017 l0-Q was false and misleading.

51.     On November 9, 2017, the Company filed its Form 10-Q for the third quarter-ended September 30, 2017 (the "3Q 2017 10-Q") with the SEC, which provided Ormat's third quarter 2017 financial results and position. With respect to the effect that repatriation would have on the income tax provision, the 3Q 2017 10-Q stated:

***Income tax provision for the three months ended September 30, 2017 was $11.0 million, compared to $12.0 million for the three months ended September 30, 2016.*** Our effective tax

rate for the three months ended September 30, 2017 and September 30, 2016, was 32.9% and 41.3%, respectively. Our effective tax rate is primarily based upon the composition of our income in different countries and changes related to valuation allowances for certain countries. Our aggregate effective tax rate for the three months ended September 30, 2017 is lower than the 35% U.S. federal statutory tax rate mainly due to higher income in Kenya with tax rate of 37.5%, offset partially by (i) *a partial valuation allowance release against the Company's U.S. deferred tax assets as described above offset by withholding taxes related to the assertion change on the Company's permanent reinvestment of foreign unremitted earnings in Ormat Systems also as described above*; (ii) lower tax rate in Israel of 16% and (iii) a tax credit and tax exemption related to the Company's subsidiaries in Guatemala and Honduras.

52.     The 3Q 2017 l0-Q also reported an income tax (provision) for the three months and nine months ended September 30, 2017 of ($11.0 million) and ($28.3 million), respectively, net income for the same period of $22.8 million and $100.8 million, respectively and diluted earnings per share for the same period of $0.38 and $1.77, respectively.

53.     The 3Q 2017 10-Q also reported deferred income taxes for the period ended September 30, 2017 of $54.5 million.

54.     The 3Q 2017 10-Q stated that the Company's disclosure controls and procedures were effective as of September 30, 2017, and that "[t]here were no changes in our internal controls over financial reporting in the third quarter of 2017 that have materially affected or are reasonably likely to materially affect our internal controls over financial reporting." The 3Q 2017 10-Q was signed by Blachar.

55.     Blachar and Angel, as agents for Ormat, separately certified the 3Q 2017 10-Q pursuant to SOX in certification identical to those in paragraph 49.

56.     Despite the assurances and certifications from Angel and Blachar, Ormat's financial statements reported in the 3Q 2017 10-Q did not fairly and accurately present the Company's financial condition. In fact, the results were false and misleading, as the Director Defendants had made crucial errors in calculating the income tax provision related to Ormat's valuation allowance. In addition, the Director Defendants failed to maintain adequate internal control over Ormat's deferred income tax assets and deferred income tax liabilities and improperly netted certain amounts according to U.S. generally accepted accounting principles (U.S. GAAP). As a result, the Director Defendants failed to maintain internal controls and the 3Q 2017 l0-Q was false and misleading.

57.    On March 16, 2018, the Company filed a Form 10-K for the fiscal year-ended December 31, 2017 (the "2017 10-K") with the SEC, which provided the Company's year-end financial results and position. With respect to the effect that repatriation would have on the income tax provision, the 2017 10-K stated:

> *Income tax benefit for the year ended December 31, 2017, was $1.4 million, compared to an income tax provision of $31.8 million for the year ended December 31, 2016.* The decrease in income tax provision from $31.8 million in the year ended December 31, 2016 to income tax benefit of $1.4 million in the year ended December 31, 2017, *primarily resulted from changes in valuation allowance and the impact of the U.S. tax reform legislation.* Our effective tax rate for the years ended December 31, 2017 and 2016, was (0.8)% and 22.5%, respectively. Our effective tax rate is principally based upon the composition of the income in different countries, *the impact of U.S. tax reform legislation and changes related to valuation allowances for certain countries.* Our aggregate effective tax rate is lower than the 35% U.S federal statutory tax rate due to: (i) as a substantial portion of our income is derived in Israel which is taxed at the corporate tax rate of 16%, partially offset by taxes on earnings in Kenya which are taxed at statutory rate of 37.5%; (ii) a tax credit and tax exemption related to the Company's subsidiaries in Guatemala and Honduras; (iii) a *partial valuation allowance release against the Company's U.S. deferred tax assets offset by withholding taxes; and (iv) impacts of U.S. tax reform legislation, specifically the remeasurement of deferred taxes and the inclusion in taxable income of the amount of certain repatriated earnings of foreign subsidiaries.*

58.    The 2017 10-K reported an income tax benefit, net income, and diluted earnings per share for the period ended December 31, 2017 of $1.4 million, $170.2 million and $3.06.

59.    The 2017 10-K also reported deferred income taxes for the period ended December 31, 2017 of $0.

60.    The 2017 10-K admitted that Company management, including Blachar and Angel, "concluded that our disclosure controls and procedures were not effective as of December 31, 2017 as a result" of a material weakness in Ormat's internal controls over reporting. Specifically, the 2017 10-K stated:

> *Material weakness.* In connection with the *change in our repatriation strategy and the related release of the US income tax valuation allowance in the second quarter of 2017, <u>we did not perform an effective risk assessment related to our internal controls over the accounting for income taxes</u>*.  As a result, we identified a deficiency in the design of our internal control over financial reporting related to our accounting for income taxes, which affected the recording of income tax accounts by us in our interim and annual consolidated financial statements during 2017, including audit adjustments to the income tax accounts. *This deficiency resulted in immaterial adjustments to income tax expense and deferred tax liabilities, but did not result*

*in a material misstatement in our previously issued interim or annual consolidated financial statements nor does it require a restatement of or change in our consolidated financial statements for any prior interim or annual period. However, this control deficiency could result in a misstatement of the aforementioned balances and disclosures that would result in a material misstatement to the interim or annual consolidated financial statements that would not be prevented or detected. Our management has concluded that this deficiency constitutes a material weakness in our internal control over financial reporting.*

61.     The Director Defendants were aware of their failure to perform an adequate assessment of the U.S. income tax valuation allowance, but failed to adequately vet whether their prior statements needed to be restated. In doing so, the Director Defendants were able to stave off admitting that their prior statements were in fact false.

**D.      Ormat Finally Admits it Made Materially False and Misleading Financial Statements**

62.     On May 11, 2018, Ormat filed a Form 12b-25 announcing that it was delaying the filing of its Quarterly Report for the period ended March 31, 2018 with the SEC because "management has identified an error in the Company's financial statement presentation of deferred income tax assets and deferred income tax liabilities that affects the Company's balance sheets in previous reporting periods." Ormat further disclosed that "[t]he Company is evaluating the impact of this error on its consolidated financial statements and the extent to which the Company's annual and quarterly consolidated financial statements filed in previous periods require revision or amendment," stating in relevant part:

> Ormat Technologies, Inc. (the "Company") has determined that it is not able to file its Quarterly Report on Form 10-Q for the quarter ended March 31, 2018 (the "Q1 Form 10-Q") within the prescribed time period without unreasonable effort or expense for the reasons described below. The Company's management has identified an error in the Company's financial statement presentation of deferred income tax assets and deferred income tax liabilities that affects the Company's balance sheets in previous reporting periods. Specifically, the Company netted certain deferred income tax assets and deferred income tax liabilities across different tax jurisdictions that are not permitted to be netted pursuant to United States generally accepted accounting principles. The Company is evaluating the impact of this error on its consolidated financial statements and the extent to which the Company's annual and quarterly consolidated financial statements filed in previous periods require revision or amendment. Further, the Company is in the process of evaluating the control implications of this error as it relates to the material weakness disclosures previously made in the Annual Report on Form 10-K for the year ended December 3l, 2017.

The Company expects to file the Q1 Form 10-Q on or before May 15, 2018, the prescribed clue date under the five calendar day extension provided under Rule 12b-25(b) under the Securities Exchange Act of 1934, as amended.

63.     On May 16, 2018, the Company filed a press release announcing that it would be forced to "restate its second, third and fourth quarter 2017 financial statements and its full-year 2017 financial statements." In the press release, Ormat also filed an Item 4.02 recommending that "investors should no longer rely upon the Company's previously issued financial statements". The Item 4.02 stated in relevant part:

> On May 16, 2018, Ormat announced that it will restate its second, third and fourth quarter financial statements and its full-year 2017 financial statements. This decision was approved by, and with the continuing oversight of, the Company's Board of Directors upon the recommendation of its Audit Committee.

> As a result of the restatement, investors should no longer rely upon the Company's previously issued financial statements for the periods set forth above, earnings releases for these periods, and other communications relating to these financial statements. In addition, the Company is further delaying the filing of the quarterly report on Form 10-Q for its first quarter of 2018 with the Securities and Exchange Commission.

> The decision to restate these financial statements is based on the Company's conclusion that there were errors in the income tax provision primarily relating to the Company's valuation allowance based on the Company's ability to utilize foreign tax credits in the U.S. prior to their expiration. Additionally, the Company netted certain deferred income tax assets and deferred income tax liabilities across different tax jurisdictions that are not permitted to be netted pursuant to United States generally accepted accounting principles. The restatement is expected to impact the "income tax (provision) benefit" line item in the Company's statements of operations, with associated impacts to net income and earnings per share and the "deferred income taxes" line items on its balance sheet. In connection with the restatement of the full-year 2017 financial statements, the Company will also make revisions to the same line items in certain quarterly financial statements for 2016 and its full-year 2016 and 2015 financial statements.

> Although the Company cannot at this time estimate when it will complete the restatement and refile its restated financial statements and its Form 10-Q for the first quarter of 2018, it is diligently pursuing completion of the restatement and intends to file the Form 10-Q as soon as reasonably practicable. Because the Company has not yet fully completed its review, the impact of the restatement described above is preliminary and subject to change.

64.     Upon the release of this information, shares of Ormat declined from $56.19 on May 11, 2018, to fall to $52.35 on May 16, 2018—a drop of over 7%.

**E.     Ormat Releases Restated Financial Results**

65.     On June 20, 2018, Ormat filed a press release with the SEC announcing that it filed an amended 2Q 2017 10-Q, 3Q 2017 10-Q, 2017 10-K, and its delayed Form 10-Q for the quarter ended March 31, 2018 ("1Q 2018 10-Q") stating in relevant part:

> As previously reported, upon the recommendation of its Audit Committee, Ormat's Board of Directors determined that the Company should restate prior period financial results based on the Company's conclusion that there were errors in the income tax provision primarily relating to the Company's valuation allowance based on the Company's ability to utilize Federal tax credits in the U.S. prior to their expiration and the resulting impact on the Company's deferred tax asset valuation allowance. Additionally, the Company netted certain deferred income tax assets and deferred income tax liabilities across different tax jurisdictions *that are not permitted to be netted pursuant to U.S. generally accepted accounting principles (U.S. GAAP)*. The restatement impacted the "income tax (provision) benefit" line item in the Company's statements of operations, with associated impacts to net income and earnings per share and the "deferred income taxes" line items on its balance sheet.

66.     In the press release, the Company included a table of the drastic changes in income tax (provision) and the effect it had on net income:

**SCOPE OF RESTATEMENT**

| | Year Ended December 31, 20 | | Three Months End December 31, 20 | | Three Months End September 30, 20 | | Three Months End June 30, 2017 | |
|---|---|---|---|---|---|---|---|---|
| | As Report | As Restate | As Report | As Restate | As Report | As Restate | As Report | As Restate |
| Income tax (provisio benefit | 1.4 | (21.7 | 29.7 | 28.3 | (11.0 | (6.2) | (6.4) | (32.8 |
| Net income | 170.2 | 147.1 | 69.4 | 68.1 | 22.8 | 27.6 | 38.2 | 11.8 |
| Net income attributa the Company's stockholders | 155.5 | 132.4 | 66.0 | 64.6 | 19.2 | 24.0 | 35.0 | 8.6 |
| Diluted EPS: | 3.06 | 2.61 | 1.29 | 1.27 | 0.38 | 0.47 | 0.69 | 0.17 |
| Adjusted net income attributable to the Company's stockhol | 151.9 | 155.2 | 66.0 | 64.6 | 21.1 | 25.9 | 29.5 | 29.5 |
| Adjusted diluted EPS | 2.99 | 3.06 | 1.29 | 1.26 | 0.42 | 0.51 | 0.58 | 0.58 |

**F.      Defendants Failed to Make Accurate Disclosures and Caused Ormat to Violate GAAP**

67.      Due to the Director Defendants' misconduct, Ormat's financial statements and financial results were not prepared in conformity with GAAP, nor was the financial information an accurate representation of the Company's operations due to the Director Defendants' improper accounting.

68.      All financial statements filed with the SEC must be prepared in accordance with GAAP and financial statements that fail to adhere to GAAP are presumed to be misleading according to Regulation S-X (17 C.F.R. §210.4-01(a)(1)). Ormat, by admitting that its prior financial statements should not be relied on, is an admission that those statements were false and misleading when issued.

## DAMAGES TO ORMAT

69.      As a result of the Director Defendants' wrongful conduct, Ormat disseminated false and misleading statements and omitted material information necessary to make such statements not false and misleading when made. The improper statements have shaken investors' faith in the Company's public statements. Additionally, Ormat is the subject of the Securities Class Action. Ormat has been, and will continue to be, severely damaged and injured by the Director Defendants' misconduct.

70.      As a direct and proximate result of the Director Defendants' actions, Ormat has expended, and will continue to expend, significant sums of money to rectify its internal control problems and resulting defendant litigation and regulatory actions. Such expenditures include, but are not limited to:

        a.      Costs incurred in investigating and defending Ormat and certain officers in the Securities Class Action, plus potentially millions of dollars in settlement or to satisfy an adverse judgement; and

        b.      Costs incurred in connection with addressing and remedying the Company's internal control violations and GAAP violations, including increased fees and expenses paid to the Company's auditor PricewaterhouseCoopers LLP.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

71.      Plaintiff incorporates ¶¶ 1-70.

72.     Plaintiff brings this Action derivatively in the right and for the benefit of Ormat to redress injuries suffered, and to be suffered, by Ormat, as a direct result of the Director Defendants' breaches of fiduciary duties and other violations of law. Ormat is named as a nominal defendant solely in a derivative capacity.

73.     Plaintiff did not make a pre-suit demand on the Board to pursue this Action, because such a demand would have been a futile and wasteful act.

74.     The Company has been directly and substantially injured by reason of the Director Defendants' breaches of their fiduciary duties to Ormat. Plaintiff, as a stockholder of Ormat, seeks damages and other relief on behalf of the Company, in an amount to be proven at trial.

75.     The Board face a substantial likelihood of liability for their breaches of their fiduciary duties of loyalty and good faith and other misconduct. The Board members were directors during the Relevant Period, either in part or in whole, and owed fiduciary duties to ensure the Company's SEC filings, press releases, and other public statements and presentations on behalf of the Company concerning its financial and business prospects were accurate.

76.     Indeed, the Board was responsible for reviewing and approving the Company's financial statements. By authorizing the false financial statements and public statements alleged herein filed with the SEC during the Relevant Period, the Board members were active participants in breaches of duties of good faith, candor, and loyalty, and have subjected the Company to lawsuits claiming violations of the federal securities laws. A director's breach of the duty of candor is not entitled to protection under the business judgment rule. As a result, any demand upon the Director Defendants to bring suit against themselves would be a useless and futile act.

77.     The Director Defendants caused and/or allowed the Company to engage in deliberately issuing false and misleading statements to mislead investors, and each of the Director Defendants faces a substantial likelihood of liability for causing Ormat to engage in such illegal and unlawful conduct. As is described above, the Director Defendants either knew, or were reckless in not knowing, that the Company's financial statements were false and misleading throughout the Relevant Period. The business judgment rule protects a wide variety of business decisions but does not protect a

corporation's officers and directors from causing a company to engage in illegal and unlawful conduct, as here.

78.     As a result of the alleged misconduct, the entire Boards face a substantial likelihood of liability for their breaches of fiduciary duties, rendering any demand upon them futile. Moreover, this conduct is not entitled to the protections of the business judgement rule, which also independently excuses demand.

79.     Additionally, the Board was specifically responsible for ensuring that Ormat had adequate internal controls regarding the Company's compliance with federal and state rules and regulations regarding its business practices. Thus, the Director Defendants are directly responsible for Ormat's failure to adopt and implement such internal controls, and for the substantial damages Ormat is subject to in the ongoing lawsuits. As such, all the Director Defendants face a substantial likelihood of liability for the claims asserted herein. Demand is therefore futile.

80.     The Director Defendants knowingly and/or with reckless disregard reviewed, authorized, and/or caused the publication of materially false and misleading statements, throughout the Relevant Period, that caused the Company's stock to trade at artificially-inflated prices.

81.     The Director Defendants' making or authorization of false and misleading statements throughout the Relevant Period, failure to timely correct such statements, failure to take necessary and appropriate steps to ensure that the Company's internal controls or internal auditing and accounting controls were sufficiently robust and effective (and/or were being implemented effectively), failure to take necessary and appropriate steps to ensure that the Audit Committee's duties were being discharged in good faith and with the required diligence, and/or acts of corporate waste and abuse of control constitute breaches of fiduciary duties, for which the Director Defendants face a substantial likelihood of liability. If the Director Defendants were to bring a suit on behalf of Ormat to recover damages sustained as a result of this misconduct, they would expose themselves to significant liability. As a result, demand is futile in this Action.

**A.     Demand is Futile to the Audit Committee Defendants**

82.     During the Relevant Period, defendants Falk, Granot, Joyal, Wong, Clarke, and Stern ("Audit Committee Defendants") served as members of the Audit Committee. According to the Company's Audit Committee Charter, the Audit Committee Defendants were specifically responsible for: the integrity of the Company's financial statements; the effectiveness of the Company's internal controls over financial reporting; the Company's compliance with legal and regulatory requirements; and discharging other duties described herein. Despite these duties, the Audit Committee Defendants knowingly or recklessly reviewed and approved, or failed to exercise due diligence and reasonable care in reviewing and preventing the dissemination of, false and/or materially-misleading earnings press releases and quarterly and annual financial statements, and failed in their specific duties to ensure that the Company's internal controls over financial reporting were sufficient and that statements made by the Company regarding its business and financial prospects were accurate. Accordingly, the Audit Committee Defendants face a substantially likelihood of liability for breach of their fiduciary duties of loyalty and good faith. Any demand upon the Audit Committee Defendants is futile as well.

**B.     Demand is Futile to all Director Defendants for Additional Reasons**

83.     On May 4, 2017, Ormat announced the Governance Agreement whereby ORIX agreed to purchase 22.1% of the common stock of Ormat from FIMI ENRG Limited Partnership, FIMI ENRG, L.P. (collectively, "FIMI"), Bronicki Investments, Ltd. ("Bronicki"), Ormat's CEO Angel, and Ormat's CFO Blachar in exchange for $627 million.

84.     FIMI is a private equity firm located Tel Aviv, Israel. Defendants Beck and Boehm are partners at FIMI and were directors at Ormat until they both resigned from Ormat in connection with the Governance Agreement on July 26, 2017. Bronicki is an investment firm located in Tel Aviv, Israel owned and controlled by Lucien Bronicki and Yehudit Bronicki—the founders of Ormat. Bronicki and FIMI entered into an agreement on March 16, 2012, whereby Bronicki agreed to sell Ormat shares to FIMI so that each Bronicki and FIMI owned approximately 22.499% of the Company's common stock. Through this ownership and related non-Company agreements, Bronicki

and FIMI had the right to designate three and five directors, respectively, to Ormat's eight-person board of directors.

85.     After the Governance Agreement with ORIX was executed, ORIX appointed defendants Freeland, Nishigori, and Wong to serve as members of the Board (the "ORIX Appointees"). Defendants Freeland and Nishigori are both are employed by ORIX. Demand is futile to the ORIX Appointees because it is in the best interest of ORIX not to investigate and expose the extent of the internal control violations at Ormat. To investigate and announce additional weaknesses or strengthening of internal controls would devalue the 22.1% of Ormat common stock that ORIX paid $627 million for not long before the misstatements were revealed. A fulsome investigation would also identify further misstatements in Ormat's financial reporting. ORIX and the ORIX Appointees are motivated to avoid investigating and admitting additional misstatements because of the reaction the market would have to such an announcement. The ORIX Appointees have already failed to launch an extensive investigation into internal control violations to determine who at the Company was at fault for the misstatements. Moreover, as ORIX relied on Ormat's financial disclosures in entering into the Governance Agreement, to reveal additional misstatements in reporting would undermine ORIX's valuation. For these additional reasons, demand is futile to the ORIX Appointees.

86.     Similarly, demand is also futile to defendants Barniv, Sharir, Falk, Granot, Stern, Beck, Boehm, and Joyal (the "FIMI and Bronicki Appointees"). Each of the FIMI and Bronicki Appointees were either directors of Ormat during the Relevant Period or immediately before the Relevant Period in this action and were suggested to the Board by FIMI or Bronicki. The FIMI and Bronicki Appointees were tasked with ensuring Ormat's internal control procedures and public statements were accurate in the time leading up to the Governance Agreement. The FIMI and Bronicki Appointees are conflicted in that they failed to maintain internal controls during the Relevant Period. Further investigation into the internal control violations and misstatements would result in the unreliability of financial statements used by FIMI and Bronicki in negotiating the Governance Agreement and could jeopardize the Governance Agreement itself.

87.     Demand is also futile to the Director Defendants because the Board is hopelessly conflicted and the Director Defendants will not launch an investigation to hold other directors responsible for their mismanagement.  Blachar and defendants Barniv and Sharir all attended Tel Aviv University during roughly the same time with significant overlap from 1987 to 1996. Blachar and defendant Barniv were both employed at Shikun & Binui Ltd. during roughly the same time and with significant overlap from 2007 to 2013. Angel and Sharir were both employed or affiliated with Frutarom Industries Ltd. during roughly the same time and with significant overlap from 2008 to 2016. Blachar and defendant Sharir were both employed by Amdocs during roughly the same time and with significant overlap from 1998 to 2005. Defendants Freeland and Nishigori are both are employed by ORIX. Defendants Granot, Boehm, and Beck all served as directors of Ham-Let Israel Canada Ltd during roughly the same time and with significant overlap from 2011 to present. Defendants Sharir and Boehm have served as directors at Gilat Satellite Networks during roughly the same time and with significant overlap since 2012. Defendants Boehm and Beck have served as directors of Magal Security Systems during roughly the same time and with significant overlap since 2014. As a result of the foregoing, demand is futile for additional reasons as to defendants Barniv, Sharir, Granot, Boehm, Freeland, Nishigori, and Beck.

## FIRST CLAIM FOR RELIEF

### (Against all Director Defendants)

### Breach of Fiduciary Duty

88.     Plaintiff incorporates by reference and realleges each and every allegation set forth above as if set forth fully herein.

89.     Each of the Director Defendants owed and owe fiduciary duties to Ormat and its stockholders under Delaware law. By reason of their fiduciary relationships, the Director Defendants specifically owed and owe Ormat the highest obligation of good faith, fair dealing, loyalty, and due care in the administration and management of the Company, including the administration and management of the Company's public filings and financial statements.

90.     Additionally, the Audit Committee Defendants have specific fiduciary duties as defined by the Company's Audit Committee Charter that, had they been discharged in accordance with Defendants' obligations, would have prevented the misconduct and the consequent harm to the Company alleged herein.

91.     Each of the Director Defendants consciously and deliberately breached their fiduciary duties of candor, good faith, loyalty, and reasonably inquiry to Ormat and its stockholders.

92.     As a direct and proximate result of the Director Defendants' breaches of fiduciary duties described herein, the Company has sustained damages.

93.     As a direct and proximate result of the Director Defendants' misconduct described herein, the Director Defendants are liable to the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

A.     Determination that this Action is a proper derivative action maintainable under the law and that demand was excused as futile;

B.     Declaring that the Director Defendants have breached their fiduciary duties to Ormat;

C.     Determining and awarding Ormat the damages sustained by it as a result of the violations set forth above from each of the Director Defendants, jointly and severally, together with pre-judgment and post-judgment interest;

D.     Directing Ormat to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect the Company and its stockholders from a repeat of the damaging events described in this Complaint;

E.     Extraordinary equitable or injunctive relief as permitted by law or equity, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the Director Defendants' assets so as to assure Plaintiff, on behalf of Ormat, an effective remedy;

F.      Awarding to Ormat restitution from the Director Defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the Director Defendants;

G.      Ordering an accounting of all compensation awarded to the Director Defendants;

H.      Awarding to Plaintiff costs and disbursements related to this Action, including reasonable attorneys' fees, consultant and expert fees, costs, and expenses; and

I.      Granting such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY .JURY

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

Dated: October 22, 2018

By: /s/ *John P. Aldrich*
John P. Aldrich, Esq.
Nevada Bar No. 6877
**ALDRICH LAW FIRM, LTD.**
1601 S. Rainbow Blvd., Suite 160
Las Vegas, Nevada 89146
Telephone: (702) 853-5490
Facsimile: (702) 227-1975
Email: jaldrich@johnaldrichlawfirm.com

*Liaison Counsel for Plaintiff*

**OF COUNSEL**

**LEVI & KORSINSKY, LLP**
Shannon L. Hopkins
733 Summer Street, Suite 304
Stamford, CT 06901
Tel: (203) 992-4523
Email: shopkins@zlk.com

**BRAGAR EAGEL & SQUIRE, P.C.**
Melissa A. Fortunato
885 Third Avenue, Suite 3040
New York, NY 10022
Telephone:  (212)308-5858
Facsimile:  (212) 846-0462
Email:  fortunato@bespc.com